(59 South. 29.)

No. 19,176.

Succession of BLOCK.

(June 13, 1912. Rehearing Denied June 28, 1912.)

*(Syllabus by Editorial Staff.)*

WILLS (§ 209*) — NUNCUPATIVE WILLS — RECITALS—CONCLUSIVENESS.

Under Civ. Code, art. 1647, which provides that nuncupative testaments received by public acts shall be full proof of themselves unless charged to have been forged, the recitals of such a will must be deemed proved until disproved.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 508; Dec. Dig. § 209.*]

Appeal from Civil District Court, Parish of Orleans; E. K. Skinner, Judge.

In the matter of the succession of Charles B. Block. On appeal from a judgment admitting decedent's will to probate. Affirmed.

E. M. Cahn and Delvaille H. Théard, for appellant. Benjamin Ory, for appellees.

PROVOSTY, J. This is a proceeding for the probate of the will of the decedent. Instead of proceeding ex parte, the proponent took a rule on the legal heir of the decedent to show cause why the will should not be probated. The will is in the nuncupative by public act form. The legal heir, in alleging cause why it should not be probated, denied seriatim every one of the recitals made by the notary of compliance with the formalities prescribed by law for wills in that form. On the trial of the rule, the only evidence offered was the will itself. The proponent offered no other, and the defendant in rule offered none whatever. The court admitted the will to probate, and the defendant in rule has appealed.

The proponent contends that a will by authentic act makes full proof of itself, and that no evidence can be admitted to contradict the recitals made therein by the notary of the formalities prescribed by law having been complied with.

To that effect, apparently, is article 1647, C. C., which reads:

"Nuncupative testaments received by public acts do not require to be proved, that their execution may be ordered; they are full proof of themselves, unless they are alleged to be forged."

And in Succession of Tête, 7 La. Ann. 95, this court did, in an opinion which was, however, set aside on rehearing, hold that evidence to contradict such recitals of the notary was not admissible until the notary had been prosecuted and convicted of misdemeanor in office for having made false recitals. That conclusion was reached

by analogy with the law of France by which such preliminary criminal proceedings against the notary is required. Baudry-Lacantinerie et Colin, Donations et Testaments (2d Ed.) vol. 2, p. 114, § 2112; Laurent, vol. 2, p. 251, § 319; Marcadé on Art. 1319. But this court, in the case of King v. Vairin, 28 La. Ann. 452, and Succession of Theriot, 114 La. 611, 38 South. 471, has held that evidence is admissible to contradict the recitals made by the notary, in a will, of compliance with the formalities prescribed by law.

The learned counsel for the defendant in rule go further, however, and claim that, where denial is made of these formalities having been complied with, the will, ipso facto, ceases to afford any proof whatever; and that the compliance with the formalities must then be proved by evidence aliunde.

In thus contending they base themselves upon the same hereinabove transcribed article 1647 of the Code. Their argument is that the affirmative statement contained in this article (that nuncupative wills make full proof "unless they are alleged to be forged") is pregnant with the negative (that they make no proof at all when they are alleged to be forged). The learned counsel fortify this argument by referring to article 2236, which reads:

"The authentic act is full proof of the agreement contained in it, against the contracting parties and their heirs or assigns, unless it be declared and proved a forgery."

They point out that in the case of ordinary authentic acts the requirement is that the allegation of forgery be not only made, but also proved, whereas, in the case of wills, the requirement is only that the allegation be made, not that it be both made and proved.

Whatever force there may be in this argument, it does not convince us that the intention of the framers of our Code in omitting from this article 1647 the requirement that the allegation be proved was to abandon, and go counter to, the fundamental rule of evidence by which fraud or crime is not to be attributed to public officers in the discharge of their official duties until due proof has been made; and yet such would be the logical and inevitable conclusion from the contention of the learned counsel. In every case, the solemn, official recitals of testaments would be nullified, and fraud and crime prima facie established against the notary, by a bare unsworn allegation of forgery.

The provision of the Code Napoleon corresponding with the said articles 1647 and 2236 of our Code is article 1319, reading:

"The authentic act makes full proof of the agreement contained in it, against the contracting parties and their heirs or assigns.
"However, en cas de plainte en faux principal (a free translation of which is, in case a criminal prosecution is instituted against the notary for having made false recitals in the act), the execution of the act alleged to be false shall be suspended as an effect of the institution of the criminal prosecution: and, en case d'inscription de faux faite incidemment (a free translation of which is, in case the charge of falsification is also made in the civil suit itself), the court may according to circumstances suspend provisionally the execution of the act."

In France, under this codal provision, an authentic act makes full proof, in the sense that evidence to contradict its recitals is not admissible, unless the notary has first been criminally prosecuted and convicted.

Now, our article 2236 is an exact translation of the first paragraph of said article 1319 of the Code Napoleon, to the effect that the authentic act makes full proof; but the second paragraph of said article 1319, C. N., was discarded by the framers of our Code. They substituted for it in article 2236 the words, "unless it be declared and proved a forgery," and, in article 1647, the words, "unless they are alleged to be forged."

The function of the second paragraph of the said article 1319, C. N., is to qualify

the broad provision of the first paragraph of the article. The first paragraph makes the authentic act full proof; that is to say, shuts the door against all contradictory proof. The function of the second paragraph is to qualify that provision so as to open the door to contradictory proof. And the clause introduced by "unless" in our two articles 1647 and 2236 are mere substitutes for this said second paragraph of said article 1319, C. N., and have the same function of merely opening the door to contradictory proof. In France, a particular method of opening the door is prescribed, i. e., the institution of a criminal prosecution against the notary. Under our Code, there is no such requirement; the door is simply opened, that's all. The suggestion made in the original opinion in the case of Succession of Tête, 7 La. Ann. 95, supra, that there should be such a criminal prosecution of the notary under our Code, may have been ingenious, but was purely an invention on the part of the court, founded upon nothing at all, and was wisely abandoned on the rehearing.

Our conclusion is that the recitals of a nuncupative will by authentic act must be considered as proved until disproved.

Judgment affirmed.